# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-0445
Filed April 1, 2026

———————————

**State of Iowa,**
Plaintiff–Appellee,
v.
**Justin Curtis Welch,**
Defendant–Appellant.

———————————

Appeal from the Iowa District Court for Polk County,
The Honorable Ashley Stewart, Judge.

———————————

**AFFIRMED**

———————————

Colin Murphy of Gourley Rehkemper Lindholm, P.L.C., West Des Moines,
attorney for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney
General, attorneys for appellee.

———————————

Considered without oral argument
by Tabor, C.J., Langholz, J., and Bower, S.J.
Opinion by Tabor, C.J.

**TABOR, Chief Judge.**

Convicted of operating while intoxicated, Justin Welch challenges the district court's denial of his motion to suppress. He contends a state trooper lacked reasonable suspicion to stop his work truck and investigated based on a mistake of law. Welch also argues the trooper unconstitutionally prolonged the traffic stop. Because Welch did not preserve his first claim in the district court, we do not consider the legality of the stop. And because the trooper developed reasonable suspicion to continue his investigation, we affirm the district court's suppression ruling.

## I. Background and Prior Proceedings

Trooper Justin Mack has served on the Iowa State Patrol's commercial motor vehicle unit for thirteen years. He describes his job as "the inspection of commercial vehicles, both inter- and intrastate inspection of both driver qualifications and vehicle equipment on the commercial vehicles traveling up and down the roadways through the state of Iowa."

While Trooper Mack was on night duty in August 2024, he noticed a large Chevy truck parked at a gas station. Given its size, the truck "appeared to be a commercial vehicle."[1] Welch sat in the driver's seat for several minutes, holding the door open with his foot. This "struck [Trooper Mack] as a little out of place." Welch entered the gas station and came out with a

---

[1] The vehicle "[h]ad a dually set of tires on the back axle, so four tires on the rear end" and had "a large dump bed on it." Based on his training and experience, Trooper Mack knew it was over 10,000 pounds. A commercial vehicle is defined as "a vehicle or combination of vehicles designed principally to transport passengers or property of any kind if . . . [t]he vehicle or any combination of vehicles has a gross vehicle weight rating or gross combination weight rating of ten thousand one or more pounds." Iowa Code § 321.1(12)(b) (2024).

brown paper bag. Trooper Mack testified, "In my experience, when you're leaving a convenience store with a brown paper bag, usually that happens to be alcohol." Welch returned to his vehicle and drove away.

Trooper Mack followed and pulled Welch over. Welch told the trooper that he worked for a lawn care business and was heading home after finishing a job. After determining the truck was an intrastate commercial vehicle, the trooper began a level III inspection.[2] He asked for Welch's paperwork and inquired what he bought at the gas station. The brown paper bag contained a sandwich and Gatorade. Trooper Mack testified he asks the same set of questions during his inspections, including inquiries on alcohol, drugs, and weapons. When he asked about alcohol in the truck, at first a "very jittery" Welch denied having any. But Trooper Mack persisted: "Are you sure? What about that cooler sitting on the floor?" Welch then admitted possessing alcohol, as the trooper found empty "Twisted Teas" in the cooler.

When he asked about drug use, Trooper Mack noted Welch's body language. Welch appeared "very rigid, very shaky" as he spoke with the trooper. Again, Welch denied the presence of drugs when first asked. But upon further questioning, Welch admitted he had drugs in the truck. Concerned about federal and state regulations for commercial vehicles, as

---

[2] The trooper detailed three levels of inspection. A level III inspection is a "driver inspection," which Trooper Mack described as "checking the qualifications of the driver. Does the driver need a medical card? Do they need a logbook? Do they have the presence of drugs and alcohol?" Two exhibits admitted at the suppression hearing outlined that a level III inspection included inspecting for "traffic violations/infractions," and observing "the driver's overall condition . . . for illness, fatigue or other signs of impairment." The trooper added: "In a Level II inspection, we do everything that's involved in a Level III, plus lights. And then in a Level I inspection, we do everything involved in a Level III, a Level II, but then we add brakes."

well as the driver's potential impairment, Trooper Mack began field sobriety testing and called for help from a drug recognition expert (DRE).[3]

The State charged Welch with unlawful possession of a prescription drug, operating while intoxicated, and possession of a controlled substance. Welch moved to suppress evidence, challenging the grounds for the stop and his prolonged detention. On the eve of the suppression hearing, the State filed a resistance to the motion to suppress, urging that reasonable suspicion was not required to stop a commercial motor vehicle for inspection. *See* Iowa Code § 321.476. The district court denied his motion.

Welch entered a conditional guilty plea to the second count, and the State dismissed the first and third count. In appealing his conviction, Welch challenges the district court's denial of his motion to suppress.[4]

## II.    Analysis

"We review the district court's denial of a motion to suppress based on deprivation of a constitutional right de novo." *State v. Arrieta*, 998 N.W.2d 617, 620 (Iowa 2023). "We give deference to the district court's findings of fact, but we are not bound by them." *Id.*

Welch raises two issues. First, he contends Trooper Mack based the traffic stop on a mistake of law. Welch asserts that because he was only operating the truck in intrastate commerce, the federal regulations on

---

[3] A report from that DRE, Trooper Allison Fleming, revealed the presence of Adderal, marijuana, and Xanax, and that Welch was having heroin withdrawal. In Trooper Fleming's opinion, Welch was under the influence of cannabis and a CNS (central nervous system) stimulant and "unable to operate a motor vehicle safely."

[4] The parties agree that we have jurisdiction to consider this appeal. *See State v. Scullark*, 23 N.W.3d 49, 53 (Iowa 2025) (discussing Iowa Code section 814.6).

commercial vehicles adopted under Iowa Code section 321.449 did not apply to him. Second, Welch argues Trooper Mack prolonged the stop without reasonable suspicion to support more investigation.

We decline to reach the merits of Welch's first argument because he did not preserve it before the district court. Granted, he now presents an interesting question on whether commercial vehicles operating exclusively intrastate are exempt from the alcohol prohibition under 49 C.F.R. section 392.5. *See* Iowa Code § 321.449 (1), (2), (4). But Welch's arguments at the suppression hearing focused on whether the trooper had reasonable suspicion to stop him.[5] Welch did not allege that the trooper made a mistake of law in stopping him nor did he obtain a ruling on that ground.[6] Thus, the State's justification for the stop—as a permissible inspection of a commercial vehicle—stands because Welch did not preserve his argument attacking that justification. *See State v. McClain*, 20 N.W.3d 488, 495 (Iowa 2025) (reiterating the "fundamental doctrine" that litigants must raise issues and receive a ruling from the district court to have them decided on appeal).

We next turn to Welch's argument that Trooper Mack impermissibly prolonged the stop. Welch first contends that after discovering that the brown paper bag contained Welch's dinner, the trooper should have known that "the Federal Motor Carrier Safety Regulations, *in their entirety*, [did] not apply to Welch." In Welch's words, he was "simply transporting his dinner,

---

[5] True, Welch raises a reasonable-suspicion argument again on appeal. But only to emphasize that reasonable suspicion "should not serve as an independent basis for the stop."

[6] In its appellee's brief, the State acknowledges that because the prosecution filed its resistance on the day before the suppression hearing, defense counsel had a limited chance to prepare a response. But, as the State contends, Welch still had opportunities to preserve error and did not do so.

which is personal property, to his home after a long day of landscaping." *See* 49 C.F.R. § 390.3T(f)(3) (2025) (explaining that federal rules do not apply to "[t]he occasional transportation of personal property by individuals not for compensation nor in the furtherance of a commercial enterprise"). But as with the mistake-of-law argument, at the suppression hearing, Welch did not discuss how the federal regulations apply to his claim that the trooper impermissibly prolonged the stop. Because he did not preserve error on this federal-regulations argument, we do not consider it.

We are left with Welch's claim under the Fourth Amendment. Welch proffers: "Trooper Mack had no reasonable suspicion to expand the scope of the stop to investigate Welch for alcohol or drug possession once he determined there was no alcohol in the brown paper bag." We disagree. Trooper Mack developed independent reasonable suspicion to extend the stop to investigate possible impairment.

True, "even *de minimis* extensions of traffic stops are unacceptable under the Fourth Amendment." *Arrieta*, 998 N.W.2d at 621. But if, based on the initial investigation, an officer develops individualized reasonable suspicion of other criminal activity that warrants further investigation, the stop "may be expanded to satisfy suspicions of criminal activity unrelated to" the initial stop. *State v. Salcedo*, 935 N.W.2d 572, 578 (Iowa 2019).

Here, Trooper Mack noticed signs of impairment while conducting his commercial vehicle inspection. Welch was jittery, rigid, and shaky. His

movements were "very rapid and unsmooth."[7] And other aspects of the trooper's exchange with Welch raised suspicion:

> And then when I asked the driver about drug use, typically that's not a laughing matter. However, when I did confront the driver about heroin, he did chuckle to me and said, "No." I said okay and asked if there was any marijuana in the vehicle. The driver looked exactly over his shoulder to the backseat and said, "Yeah; no."

Beyond his unusual mannerisms and demeanor, Welch had a cooler within arm's reach containing empty alcohol containers, contributing to the possibility that he was driving under the influence. Considered together, these circumstances gave Trooper Mack reasonable suspicion to investigate further. *See State v. Marks*, 644 N.W.2d 35, 38 (Iowa Ct. App. 2002) ("When an officer has reasonable cause to believe a driver is operating while intoxicated, a suspect may be briefly detained, asked to perform field sobriety tests and comply with other investigatory requests, without violating the suspect's Fourth Amendment rights."). Trooper Mack acted reasonably in calling Trooper Flemming to complete a drug-influence evaluation.

Having found that Welch failed to preserve error on the first issue, and Trooper Mack developed reasonable suspicion to prolong the traffic stop, we affirm the suppression ruling and conviction.

**AFFIRMED.**

---

[7] We realize that many motorists "get nervous when a state trooper draws near." *See In re Pardee*, 872 N.W.2d 384, 394 (Iowa 2015). But here the trooper's observations of Welch went beyond nervousness.